## VICTOR TALKING MACH. CO. v. AMERICAN GRAPHOPHONE CO.

(Circuit Court, D. Connecticut. July 13, 1903.)

No. 1,093.

**1. PATENTS—INFRINGEMENT—TALKING MACHINES.**
The Johnson patent, No. 679,896, for an improvement in sound-boxes for talking machines, the essential feature of which is a spring-mounting for the stylus-bar, comprising a thin piece of tempered steel having its ends twisted in opposite directions, construed, and *held* not infringed.

In Equity. On final hearing.

Horace Petit, for complainant.
Philip Mauro, for defendant.

PLATT, District Judge.   This is a bill in equity seeking to restrain defendant from an alleged infringement of letters patent No. 679,896, issued August 6, 1901, to Eldridge R. Johnson, and subsequently assigned to the plaintiff, for an "improvement in soundboxes for talking machines."   The claims sued upon are as follows:

"(1) In a sound-box, a spring-mounting for the stylus-bar, comprising a thin piece of tempered steel having its ends twisted in opposite directions, and secured to the sound-box casing, and its intermediate portion secured to the stylus-bar.

"(2) In a sound-box, a spring-mounting for the stylus-bar, comprising a strip of tempered steel having screw holes provided in each end, and the said ends twisted or sprung in opposite directions, so as to render the intermediate portion extremely sensitive, the said intermediate portion being rigidly secured to the stylus-bar and the end portions to the sound-box casing, thereby rendering the stylus-bar sensitive, for the purpose described.

"(3) The combination with the sound-box casing, a diaphragm mounted therein, a stylus-bar mounted in an opening formed in the lower wall of the casing, a tempered steel spring secured to the said stylus-bar, having its ends twisted in opposite directions, and secured to the sound-box casing on each side of the stylus-bar.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"(5) In a sound-box for talking machines, a spring-mounting for the stylus-bar, comprising small tempered steel fingers extending from each side of the stylus-bar transversely thereto, each of said fingers being twisted or sprung in opposite directions and having their free ends rigidly secured to the sound-box casing.

"(6) In a sound-box for talking machines, an annular casing having a radially-disposed aperture provided in its wall, a stylus-holder adapted to pass through said aperture, small tempered steel fingers extending from the said stylus-bar on each side thereof, each of said fingers being bent or sprung in opposite directions, and having their free ends secured to the sound-box casing, for the purpose described.

"(7) The combination with the sound-box casing, a diaphragm mounted therein, a stylus-bar mounted in an opening formed in the lower wall of the casing, a wire connection rigid in the direction of its length secured to the diaphragm and to the stylus-bar, a tempered steel spring secured to the said stylus-bar having its ends twisted in opposite directions, and secured to the sound-box casing on each side of the stylus-bar.

"(8) The combination with the sound-box casing, a diaphragm mounted therein, a stylus-bar mounted in the casing, a wire connection rigid in the direction of its length secured at one end to the stylus-bar, a head formed on the other end of said wire adapted to an opening in the diaphragm, means for securing said head to the diaphragm, and a tempered steel spring secured to the stylus-bar having twisted ends, the said twisted ends being secured to the sound-box casing on each side of the said stylus-bar.

"(9) The combination with the sound-box casing, a diaphragm mounted therein, a stylus-bar mounted in the casing, a wire connection rigid in the direction of its length secured at one end to the stylus-bar, a head formed on the other end of said wire adapted to an opening in the diaphragm, means for securing said head to the diaphragm, a film or seal of wax applied over the said connection and a tempered steel spring secured to the stylus-bar having twisted ends, the said twisted ends being secured to the sound-box casing on each side of the said stylus-bar.

"(10) The combination with the sound-box casing, a diaphragm mounted therein, a stylus-bar mounted in the casing, a wire connection rigid in the direction of its length secured at one end to the stylus-bar, a head formed on the other end of said wire adapted to an opening in the diaphragm, a flange formed on the outer end of said head, a washer secured on said head

adapted to bear against the opposite face of the diaphragm, a film or seal of wax applied over the said connection for preventing the same from rattling, and a tempered-steel spring secured to the stylus-bar having twisted ends, the said twisted ends being secured to the sound-box casing on each side of the said stylus-bar.

"(11) The combination with the sound-box casing, a diaphragm mounted therein so as to be free to move throughout its entire area, a stylus-bar loosely mounted within the casing, a wire connection rigid in the direction of its length secured to the stylus-bar, a head formed on the opposite end of said wire, means for positively connecting this head to the diaphragm, a seal of wax applied over said connection, and a thin twisted spring secured at its middle portion to the stylus-bar and having its twisted ends secured to the sound-box casing on each side of said stylus-bar, for the purpose described."

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"(16) A sound-box for talking machines comprising a casing made in two sections adapted to fit one within the other, the said two sections being driven or shrunk together, a diaphragm confined at its periphery between the two sections, yielding gaskets provided on each side of the said diaphragm; the said parts being adjusted so as to prevent the said diaphragm from rattling, yet leaving it free to vibrate throughout its entire area; a stylus-bar mounted within the casing; a tempered-steel spring having twisted ends, which are secured to the casing on each side of the diaphragm, and having its intermediate part secured to the stylus-bar; a wire connection permanently secured to the stylus-bar at one end and to the diaphragm at its other, and a wax seal applied over the connection to the diaphragm, substantially as described."

The defense is noninfringement.

It is well at the outset to make a few general observations. A serious contention is on foot between these parties and in the court for this district as to their respective rights in and to a certain type of talking machine which makes use of the disk record and a so-called "zig-zag movement." It cannot be expected that at the present juncture I will invade the darkened recesses for light upon that controversy. Consequently, it is not persuasive to charge the defendant with producing a "Chinese copy" of the plaintiff's construction. It is a somewhat peculiar method of attaining a coveted position to attack the defendant with a contention which, if successful, could only result in lopping off an unimportant branch, while the ax is withheld from performing its function in a process which might result in severing the very trunk of the tree itself.

In the case at bar the contention of the parties, as I gather it from the oral and written arguments, is chiefly confined to the question as to whether in fact the defendant uses a spring-mounting for a stylus-bar, which embodies in its construction "a thin piece of tempered steel having its ends twisted in opposite directions." The quotation is taken from claim 1. All manner of changes are rung upon the language in the later claims, but through them all the main idea which these words express can be traced. To find out what the inventor meant, we must go to his specifications. In one place he says that the piece shall be of "finely tempered steel," and that he finds it necessary to provide an "extremely sensitive mounting for the stylus-bar." High tension and extreme sensitiveness is the burden of his song. In the patent in suit, as in all like patents, the inventor is searching for a perfect reproduction of the human voice. The effort would seem to be hopeless, but every approach toward

the desired haven is laudable and worthy of protection. The point to be discussed is whether the attempted approach actually approaches. In the case at bar the patentee's line of thought is this: I will first take a spring of finely tempered steel. I will then put a reverse torsional twist in it, so that one end will twist in one direction, and the other in the opposite direction. I will then fasten down the two ends by riveting the eyes at the two ends down flat. The opposing twists, furnishing power in opposite directions, and with practically equal force, will so act upon the spring as to produce at or near the center a state of rest, a suspension of motion, a normal point at which motion ceases, but which can, however, be stirred by an almost infinitesimal vibration. To obtain the acme of responsiveness, it was indispensable that the spring should be of exceedingly fine temper. The higher the tension, the finer the result. This was the thought, as I conceive it; and now to haggle about low-grade tool steel, sheet tin, or any other substance which could only bring a minimum of tension, as being within the patent, is to degrade the high purpose, the lofty ambition, which must have quickened the pulse of the inventor when the possibility which the thought carried with it expanded upon his mental horizon.

Under this construction it is certain that no infringement has been shown by the evidence. In truth, a very much narrower construction might be evolved, and again the facts would not sustain the plaintiff's contention. In a business carried on under the circumstances and in the way testified to by the defendant's witnesses, a single infringing spring device out of a mass would even then be an accident, if not a miracle.

It is unnecessary to say more in explanation of my order, but I cannot refrain from touching lightly upon the diaphragm and the gaskets. In claim 16 an additional element in the combination appears. The pressure of the rubber gaskets on the edge of the diaphragm is to be such "as to prevent the said diaphragm from rattling, yet leaving it free to vibrate throughout its entire area." It had long been the practice to hold the diaphragm tightly between the gaskets so as to make it solid at the edges, and in patents lately prior to the one in suit Mr. Johnson had suggested that it was better to hold the diaphragm loosely, so that the vibrations might reach the very edge. Now he says, let the gaskets neither overdo nor underdo their appointed task. Let them hold just tight enough so that there will be no clamping, and yet loosely enough so that vibrations may reach the extreme periphery. The thought that lay back of this was of the very essence of dream life. It came from the ineffable, the uncertain, and is too impractical to be granted a monopoly.

Let the bill be dismissed, with costs.